Our first case for argument today is 21-2371, Chemco Systems v. RDP Technologies. Mr. Johnson, please proceed. Good morning, Your Honors, and may it please the Court. There are two issues that I'd like to discuss with you this morning, the first being a motivation to combine matter, which I think has an interesting PTAB procedure wrinkle to it, and the second being a claim construction matter. On motivation to combine, the panel erred in finding no motivation to combine the Underwood and Pesatini references when it only very briefly considered just one of the three reasons we presented for modifying the Underwood reference. Specifically, Chemco noted three compromises in Underwood that I think are maybe most succinctly stated in the oral argument excerpt shown at page 34 of our blue brief that notes, one, the slurry density motivation, two, the wear on equipment, the bearings and seals motivation, and three, the complex system design motivation. Now, the final written decision discussed only one of those three reasons for modifying Underwood, where it only very briefly addressed the motivation number one, the slurry density motivation, at Appendix 30-31. As we detail in our briefs, we think that the panel misapprehended or overlooked some evidence in support of that first motivation, but I think maybe more interesting for our discussion this morning, the decision wholly failed to acknowledge or address the second and third motivations, and that overlooked evidence implicates the rehearing procedural issue that I alluded to. Here, Chemco availed itself of all possible avenues for getting the PTAB to consider the entirety of those three lanes of evidence for the motivation to combine. Mr. Johnson, you somehow read the regulation 37 CFR 42.71D as requiring the Board, at least on reconsideration, to expressly address every ground that you raised. I'm not seeing that in the language of the regulation. How do you read that in? And I agree that we're not necessarily seeking a blanket rule that every point that a party raises in a motion for rehearing needs to be addressed. I can think of some situations where, you know, you're balancing on a preponderance of the evidence standard, and one side has a mountain of evidence, and the other side brings three pebbles of evidence on the other side and asks for rehearing, and the panel only gets to two of those in the rehearing request, and, you know, that's not cause for us to run here and ask for a remand or relief to get that third pebble considered. But in an instance here where the issue is whether a finding of no motivation to combine and us having presented in our rehearing brief two unconsidered motivations to combine, I think the Board would be required to consider those two pieces of evidence in order to show that there's substantial evidence for their finding no motivation to combine. But if it's not the regulation, do you point to any authority binding on us that would have required the Board to address what you contend are two other motivations? I think two points. One, the finding of no motivation to combine has to be supported by substantial evidence, and to have a finding that's based on the absence of evidence and to have not considered two pieces of evidence that we had brought forward, I think that would be one source. And perhaps the APA as well, you know, having presented evidence and not having it be considered would have opportunity to be heard. To what extent were these arguments presented throughout the proceedings, or were they first presented during the rehearing? Of course. So these are theories and evidence that we've provided throughout the course of the proceedings. Starting with the petition, our petition cited Mr. Benson's expert report, appendix 979, particularly paragraph 208 there, where Mr. Benson identifies compromises that Underwood made in its system to deal with grit, even in its improved system that had the three beaters to try to keep the grit stirred up. It recognized that there were limitations even in its solution, including the need to have the mixing apparatus to agitate the slurry from the slurry tank, and expressly the slurry density limitations where Underwood could only make thick slurries to prevent the grit from settling out. In the Patent Owner response at appendix 392 to 393, RDP argued that Underwood had taken care of the grit issues on its own, and that there was no motivation to further improve its system. Then in our reply at appendix 518 to 519, we've worked through each of those three motivations. You see the picture of the at the bottom of page appendix 518, note the wear on equipment, the motivation where the bottom of column two of Underwood states that it keeps all of its bearings and seals above the level of slurry in the tank. And then at appendix 519, we again reiterate the lower density slurry argument. So all three of these motivations were in play and discussed throughout the proceeding, as well as that oral argument in the oral argument excerpt, which is again excerpted at page 34 of our blue brief. So we included those three arguments in our 15-page rehearing request. Fourteen and a half of our pages of our argument were directed towards the motivation to combine issues. Half a page noted the claim construction issue. The PTAB opted not to address the motivation to combine, and instead only addressed the claim construction issue, saying, in order for petitioner to prevail on rehearing, it must show that both conclusions were incorrect. Accordingly, we need only address the slurry tank issue. We submit that the PTAB's handling of the motivation to combine and the rehearing request was an error. Rehearing requests are not meant to be limited to case dispositive issues. They allow parties to request modification of a decision based on all matters the party believes the board misapprehended or overlooked. I think the policy reason behind that is clear. It's important for all of the evidence in a matter to have been considered at the trial level. Well, they did in the final written description, right? In the final written description, they found no motivation to combine. Correct. At page 30 to 31 of the final written decision, they find no motivation to combine, but they only mention and discuss the first motivation, the slurry density motivation. So your argument is that you think it's not sufficient for them to do it in the final written description. They also have to do it in the rehearing decision as well. That's your argument, right? No, respectfully, Your Honor. Our argument is that they have to address the second and third motivations for modifying Underwood somewhere. In the record, they found no motivation to combine, but only on one of the three paths, the three paths for motivation to combine that we presented through the matter, they misapprehended or overlooked the second and third motivations completely, not having addressed them or even mentioned them in the final written decision or in the rehearing request. But that's speculation. They didn't expressly discuss it, but normally we would assume that the board considered all the evidence in front of it, wouldn't we? The way PTAB decisions are typically laid out, it actually makes that explicit where they'll, in a final written decision, they'll lay out all of one side's argument, the petitioner's arguments, all the patent owner's arguments, and then they'll discuss the evidence. In this case, in laying out the arguments in the final written decision, they never mentioned the bearings and seals or the wear on equipment motivation or the cumbersome nature of Underwood's solution, that triple cumbersome thing that you're talking about. Is this your design constraints argument about Underwood? It's one of two. Where's your expert testimony for that? Because that's a problem. I see nothing but attorney argument about it. So in paragraph 208, Mr. Benson does mention the Underwood utilizes these mixing apparatuses to agitate the slurry. And I think additional evidence towards this being a compromise in Underwood is the bottom of column two of Underwood, where he says they avoid wear and tear on the equipment by presenting all of the bearings and seals in their tank above the level of the slurry. So this is a compromise that even Underwood recognized. But he doesn't say there's a motivation to combine it with Pesatini in light of this. I not specifically based on that on that on that second motivation, that that second motivation came in. You didn't provide evidence to the board of an actual motivation to combine Underwood with Pesatini. You provided some design related statements in Mr. Benson's testimony at 208, paragraph 208 about Underwood, but you didn't link it to why those design constraints would cause someone to be motivated to combine it with the other thing. And that's the heart of the issue, motivation to combine. And I think Mr. Benson's testimony with the petition is some evidence that there were compromises made in the Underwood system that Underwood recognized. And then I'd point you again to the petitioner reply at 518 and 519, where Underwood's recognition of its own limitations is also evidence in favor of our motivation. Well, I mean, the question isn't whether you put on evidence. It's a question of whether or not the board had substantial evidence to reach its conclusions. So fine, you put on evidence, but why is that persuasive in any way to a reversal of this case? Again, the finding is a finding of no motivation to combine. So the put forward in favor of that motivation to combine needs to be considered in order for there to be a proper finding of the absence of evidence. But that assumes that they didn't consider it at all, or they didn't consider it. Agreed. And that's your position. Yeah, agreed. We submit that the language of the final written decision is the best evidence on what was as well. What would you have us do if, just for the sake of the argument, we agreed with you on they overlooked two out of three motivations to combine, but you're wrong on claim construction? What does our opinion look like at that point? Agreed that we need to win on both issues. So it would be a difficult advisory opinion there to write on the proper handling of rehearing requests. Maybe moving briefly to the construction issue. The parties had agreed, at least in part, on the meaning of claim construction of a slurry tank as a tank for holding slurry produced through a lime slaking process. The PTAB accepted that agreed upon construction, but added a caveat based on arguments from our friend at RDP, added a caveat that a lime slaker into which lime and water are charged are different from a slurry tank. While we agree that those are different words with different meanings, the PTAB erred in finding that there's no overlap in the meaning of those terms. That is, while not all slurry tanks are slakers, slakers can provide the required function of slurry tanks. I think the best evidence of this in the intrinsic evidence is the language of Claim 1 itself. Limitation A has broad language, a slurry tank for watery lime slurry having lime particles and grit particles therein. There's nothing in that language or elsewhere in Claim 1 that would indicate that certain prior art tanks that meet the plain meaning of Limitation A should be excluded. There's nothing in that language that suggests that the slurry tank cannot be the location where the slurry creation reaction takes place. That has to take place somewhere. There's no language that requires the slurry tank receive slurry from an external source. Claim 1's agnostic as to the source of the slurry, and the PTAB actually agreed with us on this point at Appendix 43 in their rehearing decision, but they opted to retain the slaker caveat in their construction. I think the second point of confirmation is Dependent Claim 7, which recites the apparatus of Claim 1, including a lime slaking device for providing lime slurry to the slurry tank. This adds two requirements to Dependent Claim 7. One, the lime slaking device is where the slurry creation reaction takes place, and that the lime slaking device is the source of the lime slurry that goes to the slurry tank. Because narrower Claim 7 counsels against reading a separate lime slaking device into Claim 1, as informed by this Court's precedents in Phillips, SRIB, Matsushita, we submit the proper construction of slurry tank as the agreed upon portion without the added caveat that excludes a slaker from falling within the scope of a slurry tank. So, to conclude, we think this matter could be gracefully returned to the PTAB with the ruling that the proper construction of slurry tank is the parties agreed to construction without the slaker caveat, and an instruction for the PTAB to consider the overlooked motivation to combine evidence as detailed in our first hearing request. Okay, counsel, I'll reserve your remaining 12 seconds for rebuttal. Thank you very much. Good morning, Your Honors, and may it please the Court. I'd like to step back just for a moment to set some context. In the red brief at page 11, we provided an annotated copy of Figure 1 of the invention is the desire to separate the slaking process from the slurry recirculation. So, if we look at Claim 1, which is mapped there, these are means plus function limitations, and they're mapped in that annotated version to the corresponding structure in the figure. The claim begins with Element A, which recites a slurry tank for a watery lime slurry having lime particles and grit particles therein. The slurry tank is shown as a Figure 14 in Figure 1. The slurry tank is separate from the slaker, which is shown as Figure 11. Claim Elements B through D work their way around the structure of the slurry recirculation loop in a counterclockwise direction, ending up with Element E, which recites recirculating means for recirculating the rest of the slurry to the slurry tank. This completes the structure of the claimed loop, which begins and ends with the slurry tank. Claim 7 depends from Claim 1 and adds a lime slaking device for providing lime slurry to the slurry tank. Lime slaking device is shown as Figure Element 11. Claim 7 adds the remaining feature depicted in Figure 1 of the slaker, which provides slurry to the slurry tank where the slurry loop recited in Claim 1 begins and ends. So does Claim 1 not require a lime slaker anywhere in the system? It does not. So where do you charge the water and the lime? How do you even practice anything about your patent under Claim 1 if there's no slaker anywhere? So from the system level, consider two processes. One is slaking, where you're charging lime and water into a tank, mixing it up. There are different kinds of slakers. Some of them are continuous slakers that as you're adding water and lime, it kind of spills out the back and into the process. There are other slakers that are batch slakers. You put all the lime in and all the water in, you mix it all up, and you dump the whole batch out. That's one process in a water treatment system. This is a process for treating slurry. There's a recognition that there's a problem with grit in slurry. What our inventors came up with was an approach to getting more consistent slurry to use in the process for its intended purpose, by taking the result of the slaker, be it a continuous slaker or batch slaker, putting that into a slurry tank, which is a separate system from the slaking system, recirculate that slurry from and back to the slurry tank, do the grit removal as part of that process, which allows you to more tightly control the grit removal, and then dose to the use from there. I think I understand it, but what I'm confused on is under Claim 1, if the board's construction is correct, there is no separate slaking device. That's correct. And so everything's just done in the slurry tank? Well, the claim reads on the slurry loop. So envision... Well, does the loop require necessarily that a slaking device is external to the slurry tank under the board's construction with respect to... It's a separate device that would feed the slurry tank as recited in Claim 7, where you have both. You have the slaker for creating the slurry, feeding the slurry tank, and then Claim 1 is the loop. But someone could infringe Claim 1 without a separate slaking device? Correct. You could buy a slurry recirculation loop through a loop. Okay. And put it in your plant, and you would say put slurry in there and run the loop and feed the process. You'll have better slurry than you would had you been feeding the process directly from the slaker. That's a major part of the invention here. So turning to the board's claim construction, the 175 patent itself explains that a lime slaker creates the slurry from lime and water. It also makes clear that in the context of the invention, the lime slaker and the slurry tank are distinct structures. And under Phillips, the claim terms must be given the meaning they would have to a person skilled in the art in the context of the entire patent. Kemco argues that the board erred by not adopting a construction slurry tank as simply meaning a tank for holding slurry produced through a lime slaking process. The board recognized that throughout the IPR, RDP had consistently maintained that in the context of the invention described in 175 patent, the slurry tank is different from the slaker. RDP's position is that while a slaker includes a tank... Is it your view that if we affirm on the claim construction, we need not reach the motivation to combine issue? That is correct. Because under the board's construction, Underwood has a single tank, which is a slaker, into which lime and water are charged, and therefore Underwood does not disclose a slurry tank. Why don't you nonetheless go ahead and address the motivation to combine issue? Yes. So just to put a bow on the claim construction, this is an O2 micro issue. The dispute between the parties was whether the slaker and the slurry tank can be one and the same. They cannot, and it was RDP's position that they cannot, and the board agreed. So turning to the motivation to combine here, Underwood is indisputably directed to a slaker. It is entitled Lime Slaker, and it includes a single vessel where lime and water are charged and mixed together to form a lime slurry. We provided an annotated figure from Underwood in our red brief at page four. Lime and water are added to the vessel where it is mixed together, and the lime slurry is dumped out of the slaker through a weir box. I mentioned continuous slakers before. This is an example of a continuous slaker. You add more lime and water in, more slurry will get dumped out the back end over the weir. Underwood is designed to eliminate problems caused by rip buildup. Do you agree with opposing counsel's argument that they presented three different motivations to combine? No. They did, but the density of the slurry argument, while there was a comment in Mr. Benson's declaration in paragraph eight, the last sentence of that paragraph, that comment was neither argued nor addressed in the petition. Is this the high slurry versus low slurry, low density slurry? Low density slurry, yes. So that statement was not argued in the petition as providing a motivation to combine. So it was just a comment in the declaration that was not in the petition, so there was no argument developed around it. It was only in the reply where CHEMCO first raised the low density slurry argument and the board addressed that, which I can get to. But that was in a reply argument and the board did not need to consider it, but it did and addressed it and found it unpersuasive and uncorroborated. So with respect to what was in the petition, CHEMCO argued that because Underwood itself discusses and recognizes that there are problems associated with grit in a slaker, that that recognition would have led... But your expert testified and the board even cited it, right, that Underwood itself addressed the grit problems. That's the point. So CHEMCO had argued that the recognition of a grit problem would have provided motivation to go get them a petition. This is just a substantial evidence review that we do, so if the board founded and cited your expert and your expert said it, then that's the end of the case. It doesn't matter if they have contrary evidence, right? Whether we have contrary, it was their motivation to combine. Right, it doesn't matter whether that you prevail. Yes. It doesn't matter whether they presented contrary evidence because we review the board decision for substantial evidence. That's right, and there's correct. The board looked at Underwood and said Underwood itself recognizes their grit and Underwood itself states that it eliminates... Okay, so we've covered two of the three motivations that they articulated. Is the third one the design choices concept, or is that part of the one we just talked about? It's part of the low density slurry wear on the bearings, and again this stuff was all presented late in the reply. There's no expert testimony on it. There was no deposition on it. It was in the reply, so what the board did was it took the lower low density argument and considered it. It identified it in the final written decision as a reply argument, but it nevertheless considered it and stated that it was based on only that single sentence within Mr. Pence's declaration that grit may still accumulate, for example. Well, this is the low density argument, or is this also the same? I have trouble understanding the three distinct motivations to combine, so which one is this that we're talking about? As do I, Your Honor. So the motivation to combine that was clearly set forth in the petition was Underwood recognizes that grit is a problem, therefore combine it with festini. We refuted that. We said no, Underwood solves it. Then these other arguments were not developed, but presented and suggested in the reply about the wear and tear in the bearings and the low density slurry, and I view them all as kind of a Hail Mary in the reply because we refuted the motivation that was presented in the petition. So it was all about the complexity of the design. But despite the fact that they were in the reply, the board went ahead and addressed it anyway and said it was just unsupported. Yes, unsupported, uncorroborated. The board cited to TQ Delta and stated that obviousness determinations cannot be based on conclusory and unsupported expert testimony and to the American Academy of Sciences case, which provides that the board is entitled to weigh the declarations, conclude the lack of factual corroboration warrants discounting the opinions, which is what it did here. So our position is substantial evidence more than supports the board's finding that CHEMCO failed to carry its burden that those skilled in the art would have combined underwood and casatini. Okay, thank you, counsel. Anything further? I would just note relating to Judge Stark's comments, we read the CFR the same way, but CFR imparts no requirements on the board. CFR is about requiring the party to set forth its grounds for rehearing to the extent it thinks there are. And the fact that you only get one, the CFR is consistent. It states that if you have a number of reasons, they all need to be set forth in that one single request. Very briefly, all three of the motivations to combine were properly presented in the, at least as soon as the reply, if not before. Under Genzyme, this court's precedence in Genzyme, this is proper reply, evidence, and argument. These issues were clearly in play, see our reply at appendix 518 to 519, the oral argument. Do you think that it's proper in the reply to raise an entirely different motivation to combine than what you had in the petition, and you think Genzyme supports that? I think the motivation to combine presented in the petition was that Underwood recognized that compromises, even its system wasn't perfect, that compromises needed to be made. You could only put forth certain types of... The petition focused on grit. Right, and the slurry density is related to grit. You have to keep the, in Underwood it says that it needs to keep its slurry sufficiently thick and dense so that the grit doesn't fall out. That's what Underwood says, but your petition doesn't say anything about that, which would have alluded to the low density, high density differentiation. Note that our petition does cite the Underwood paragraph two, or Mr. Benson's testimony at paragraph 208 that does point out that Underwood recognized that it needed to make These three motivations were clearly in play from our reply, from the petition, paragraph 208. The reply at appendix 518 to 519 at oral argument at appendix 735. RDP had full and fair opportunity to respond, which is the guiding principle under Genzyme. There was no motion to strike filed, no argument for waiver in the briefing here, and so we submit that these were properly presented motivations to combines that needed to be considered in order to make a finding of no motivation to combine that's supported by substantial evidence. Okay, thank you, Counselor. Your time has expired. Thank you very much. Thank you both, Counselor. The case is taken under submission.